# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **DAVID EVANS III, DAVID SHEPPARD, MARTENIA SHYNE, TABAS JACKSON, ANTOINETTE GARRETT-WILLIAMS, MONTA SERVANT, and LASHON SHAFFER, on behalf of themselves and all others similarly-situated,** | |
| | **Case Number 18 cv 6018** |
| **Plaintiffs,** | |
| **v.** | **JURY DEMANDED** |
| **THOMAS J. DART, SHERIFF OF COOK COUNTY, and COUNTY OF COOK, a unit of local government,** | |
| **Defendants.** | |

## VERIFIED CLASS ACTION COMPLAINT FOR INTENTIONAL PATTERN-AND-PRACTICE AND DISPARATE IMPACT RACE DISCRIMINATION

DAVID EVANS III, DAVID SHEPPARD, MARTENIA SHYNE, ANTOINETTE GARRETT-WILLIAMS, MONTA SERVANT, TABAS JACKSON, and LASHON SHAFFER, ("Plaintiffs"), by their attorneys, Cass T. Casper, TALON LAW, LLC, and Arthur Gold, Gold & Associates, on behalf of themselves and all others similarly-situated, complain as follows against THOMAS J. DART, Sheriff of Cook County, and the COUNTY OF COOK.

## NATURE OF THE ACTION

1. This is an action for relief from employment discrimination in violation of Title

VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a) ("Title VII"), and for violations of the Equal Protection and Due Process Clauses of the 14th Amendment of the United States Constitution.

2.  Plaintiffs are seven African American sworn officers of the Cook County Sheriff and the County of Cook working as Correctional Officers and, in the cases of Plaintiffs Sheppard and Shaffer, as Cook County Sheriff's Police Officers.

3.  Plaintiffs bring this action for relief from at least Defendant Sheriff's policies, practices, and decisions that caused Defendant's adverse actions against Plaintiffs, which adverse actions include, but are not limited to, (1) recommending discipline and levels of discipline of Plaintiffs in the first instance, (2) suspending Plaintiffs without pay pending a disciplinary hearing before the Cook County Sheriff's Merit Board ("Merit Board"), and (3) sending Plaintiffs to the Merit Board for termination when non-Caucasian officers accused[1] of identical, substantially similar, similar, and/or more egregious misconduct are not sent to the Merit Board for termination.

4.  This Complaint involves claims that Plaintiffs, all long-term Sheriff's officers,

---

[1] None of the Plaintiffs have yet been terminated by the Merit Board and the allegations against them are allegations only. This Complaint focuses on the Defendants' policies, procedures, and decisions that resulted in adverse actions against Plaintiffs, including Plaintiffs' investigations, current suspensions without pay, and pending Merit Board termination cases. Similar racially-disparate problems have been the focus of contemporary reports in the context of school disciplinary policies, practices, and outcomes. *Cf.* United States Government Accountability Office Report, "Discipline Disparities for Black Students, Boys, and Students with Disabilities," (*https://www.gao.gov/assets/700/690828.pdf*) (March 2018).

have been subjected to a disciplinary and investigative process that produces a statistically-significant number of unfavorable outcomes toward non-Caucasian and Black officers such as Plaintiffs, and that the entire disciplinary process is so pervaded by unlawful racially-biased policies, practices, and decisions as to cause prohibited discriminatory treatment, effects, and impacts on non-Caucasian and Black officers.

5.    Plaintiffs have discovered in bringing their EEOC Charges and this lawsuit that far more Black officers are investigated for misconduct, recommended for discipline following investigation, and suspended without pay from their careers pending Merit Board hearings, than are similarly-situated Caucasian officers who are accused of engaging in identical or similar conduct.

6.    Plaintiffs bring this Complaint in an effort to rectify the underlying policies, practices, and decisions within the Sheriff's Office that cause racially-disparate outcomes in the Sheriff's disciplinary process.

7.    Both the actual policies, practices, and decisions resulting in Plaintiffs' Investigations, recommended discipline, and their suspensions pending Merit Board hearings, have had and continue to cause a prohibited disparate adverse treatment, effects, and impacts upon non-Caucasian and Black officers in the administration of discipline, to include Plaintiffs, all of whom are African-American and Black.

8.    Plaintiffs seek injunctive and declaratory relief, compensatory damages, punitive

damages (as to *Monell* claims), back pay and front pay, back benefits, pre- and post-judgment interest, reinstatement, and reasonable attorneys' fees and court and litigation costs as remedies for Defendant Dart's violations of their rights.

9. If the Court deems it appropriate and otherwise lawful, Plaintiffs also seek the appointment of an independent monitor to oversee the Sheriff's disciplinary process for the purpose of addressing the problems underlying the claims raised herein.

10. Plaintiffs also seek class certification, with a motion for same to follow filing of this Complaint.

## JURISDICTION & VENUE

11. Jurisdiction of this court arises under 28 U.S.C. §§ 1331, 1337 under 28 U.S.C. § 1331 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, 42 U.S.C. § 1983, 28 U.S.C. § 1343, and the Fourteenth Amendment of the United States Constitution.

12. This Court has jurisdiction to award attorney's fees under 42 U.S.C. § 1988 and under Title VII, 42 U.S.C. § 2000(e), *et seq.*

13. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims herein have occurred in this district, and because Defendants maintain places of operation within this District.

## PARTIES

14. Plaintiff DAVID EVANS III is a natural person and a legal adult. He is

currently a resident of the state of Florida, but is domiciled in Illinois. He is employed by Defendants Sheriff and Cook County as a Cook County Correctional Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

15. Plaintiff DAVID SHEPPARD is a natural person, a legal adult, and a resident of Cook County, Illinois. He is employed by Defendants Sheriff and Cook County as a Cook County Sheriff's Police Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

16. Plaintiff MARTENIA SHYNE is a natural person, a legal adult, and a resident of Cook County, Illinois. She is employed by Defendants Sheriff and Cook County as a Cook County Correctional Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

17. Plaintiff TABAS JACKSON is a natural person and a legal adult, and a resident of Cook County, Illinois. He is employed by Defendants Sheriff and Cook County as a Cook County Correctional Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

18. Plaintiff ANTOINETTE GARRETT-WILLIAMS is a natural person, a legal adult, and a resident of Cook County, Illinois. She is employed by Defendant as a Cook County Correctional Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

19. Plaintiff MONTA SERVANT is a natural person and a legal adult, and a

resident of Cook County, Illinois. He is employed by Defendants Sheriff and Cook County as a Cook County Correctional Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

20. Plaintiff LASHON SHAFFER is a natural person and a legal adult, and a resident of Cook County, Illinois. He is employed by Defendants Sheriff and Cook County as a Cook County Sheriff's Police Officer. Plaintiff was harmed by Defendants in Cook County, Illinois.

21. Defendant THOMAS DART ("DART"), is sued in his official capacity as the duly-elected Sheriff of Cook County. He has a principal place of operation at 50 West Washington Street, Chicago, Illinois 60602. Defendant DART harmed Plaintiffs in Cook County, Illinois.

22. At all times relevant, Defendant Dart was and is a policy maker for the Cook County Sheriff's Office and has final policymaking authority with regard to the conduct alleged herein.

23. At all times relevant, Defendant Dart acted under color of law.

24. At all times relevant, both Defendants Dart and Cook County have had at least 15 employees during 20 or more calendar weeks within the calendar year preceding the violations, and are and have been, therefore, employers within the meaning of Title VII.

25. Defendant COOK COUNTY is a County in the State of Illinois with a principal

place of business of 118 North Clark Street, Chicago, IL 60602. The County has indemnification obligations for wrongful acts committed by its officials or employees, such as the Sheriff. *See* 745 ILCS §§ 10/1-202 and 9-102 and is named in its capacity as indemnitor.

## EXHAUSTION OF ADMINISTRATIVE PROCEEDINGS

26. On April 13, 2018, Plaintiff DAVID EVANS III filed a charge of race discrimination with the EEOC.

27. On April 13, 2018, Plaintiff DAVID SHEPPARD filed a charge of race discrimination with the EEOC.

28. On April 13, 2018, Plaintiff MARTENIA SHYNE filed a charge of race discrimination with the EEOC.

29. On April 23, 2018, Plaintiff TABAS JACKSON filed a charge of race discrimination with the EEOC.

30. On April 13, 2018, Plaintiff ANTOINETTE GARRETT-WILLIAMS filed a charge of race discrimination with the EEOC.

31. On April 13, 2018, Plaintiff MONTA SERVANT filed a charge of race discrimination with the EEOC.

32. On April 13, 2018, Plaintiff LASHON SHAFFER filed a charge of race discrimination with the EEOC.

33. On or after July 13, 2018 all Plaintiffs received right-to-sue letters from the Civil

Rights Division of the United States Department of Justice. A copy of these right-to-sue letters are attached hereto as Group Exhibit 1.

34. The Title VII claims in this Complaint are timely filed with 90 days of receipt of the right-to-sue letters.

35. This Complaint is also timely filed as to all counts because the harms alleged herein are on an ongoing and continuous basis.

36. This Complaint is also timely filed as to all counts because the harms alleged herein were concealed by Defendant Dart and/or not discovered by Plaintiffs until the investigation leading to the EEOC Charges uncovered the wrongful policies, practices, decisions, customs, and wrongful express acts alleged herein.

37. Plaintiffs may not raise discrimination at their Merit Board hearings because such body does not have statutory power to hear such issues and, moreover, will exclude evidence of same if it is offered.

38. Plaintiff Shaffer, by way of example, attempted to raise these issues there in his hearing in June 2018 and was denied the ability to do so.

39. Plaintiffs have complied with all administrative prerequisites to bring this lawsuit.

## FACTS COMMON TO ALL COUNTS

40. Plaintiffs repeat, re-allege and incorporate by reference, the allegations in all

8

other paragraphs of this Complaint with the same force and effect as if herein set forth.

## I. **Defendant's Discriminatory Policies, Practices, And Decisions Are Creating A Prohibited Disparate Impact Based Upon Officer Race.**

41. Defendant has adopted facially-neutral policies, practices, and/or decisions of suspending non-Caucasian officers without pay pending a hearing before the Merit Board at a statistically-significant higher rate than Caucasian officers.

42. Defendant has adopted facially-neutral policies, practices, and/or decisions of disciplining and/or recommending disciplinary action against non-Caucasian officers at a statistically-significant higher rate than Caucasian officers for alleged conduct that is the same and/or substantially similar.

43. Defendant, in addition to and/or in the alternative to the above-identified policies, practices, and decisions, has instituted a disciplinary process which, as a whole contains policies, practices, customs, usages, and decisions that are creating a racially-disparate impact on non-Caucasian officers, to include Plaintiffs.

44. Defendant's policies, practices, and/or decisions complained-of herein are neither manifestly job-related nor consistent with business necessity.

45. Less discriminatory alternatives exist and have existed to achieve any of Defendants' purported business purposes.

46. By way of example, Defendant has a policy and practice of failing to

consistently utilize any kind of disciplinary chart / schedule / matrix of disciplinary sanctions in its disciplinary process leading to suspensions without pay and Merit Board hearings. Such a matrix would screen for racial bias by ensuring that disciplinary penalties are objectively determined and not subject to either explicit and/or implicit racial bias. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ("subconscious stereotypes and prejudices" remain "a lingering form of the problem that Title VII was enacted to combat").

47. By way of further example, Defendant Dart has a policy and practice of permitting Office of Professional Review Staff and Command Channel Review Staff to recommend and to impose arbitrary and capricious penalties upon officers for alleged misconduct without any regard for consistency in imposition of recommendations to institute discipline and/or what level of discipline to institute.

48. Controls among such staff and/or uniform policies as to the imposition of discipline would help screen for racial bias, if properly drafted, implemented, and utilized.

49. Defendant Dart further has a policy and practice of suspending officers without pay pending Merit Board hearings without utilizing any tools to assess consistency of imposition of such measures; rather, the policy and practice is pervaded by at least implicit racial bias working to the severe disadvantage of Black officers.

50. Defendant further has a policy and practice of suspending officers without pay pending Merit Board hearings without any safeguards in place to screen for racial bias.

51. Defendant further has a policy and practice in place of investigating officers for alleged misconduct without any safeguards in place to screen for racial bias in selection of officers for investigation in the first instance.

52. On belief and information, other policies and practices inhering in the Sheriff's disciplinary process are creating statistically-significant racially disparate adverse effects on non-Caucasian officers. Plaintiffs believe that a reasonable opportunity to conduct such discovery will uncover sources of racial bias in the administration of discipline causing the disparate impact on non-Caucasian / Black officers.

53. Further, and in addition and/or in the alternative, while each of the foregoing employment practices cause a disparate impact on Black officers, all of the elements of the Sheriff's disciplinary and decision-making process are not capable of separation for analysis and the entire disciplinary process must be analyzed as a whole as one employment practice. *See* 42 U.S.C. § 2000e-2(k)(1)B)(i).

II. **Pursuant To Defendant's Policies, Practices, And Decisions, Non-Caucasian Officers, Including Plaintiffs, Have Been Investigated, Recommended For Discipline, Suspended Without Pay, And Sent To The Merit Board For Hearings At A Statistically-Significantly Higher Rate Than Caucasian Officers.**

54. Plaintiffs are all non-Caucasian, African American, and Black employees of the Cook County Sheriff and the County of Cook.

55. Plaintiffs are all currently suspended without pay pending by order of the Sheriff pending termination proceedings before the Merit Board.

56. Plaintiffs are all accused of violating certain rules and policies of the Sheriff's office, which are the subject of the Merit Board proceedings.

57. Numerous Caucasian Correctional and Sheriff's Police Officers have engaged in identical or substantially-similar alleged misconduct, or more egregious misconduct, and received no discipline, lesser discipline, and/or were never suspended without pay pending termination proceedings before the Sheriff's Merit Board.

58. The number of non-Caucasian officers sought or recommended for termination by Defendants is at a statistically-significant level of disparity over and above Caucasian officers accused of identical or substantially-similar alleged misconduct, or more egregious alleged conduct.

59. The ratio of non-Caucasian officers investigated, recommended for discipline, and suspended without pay pending termination proceedings before the Sheriff's Merit Board is at a statistically-significant level of disparity over and above Caucasian officers

accused of identical or substantially-similar alleged misconduct, or more egregious alleged conduct.

### III. Comparators Further Substantiate Plaintiffs' Claims That They Have Been Subject To Defendant Dart's Racially-Discriminatory Policies, Practices, And Decisions.

60. Plaintiffs Servant, Evans III, and Jackson are all accused of using force on detainees of the Cook County Department of Corrections. Each did so in self-defense and/or consistently with the Sheriff's Use of Force policy.

61. None of these Plaintiffs was ever charged criminally and each has cases still pending before the Merit Board; however, each has been sent by the Sheriff to the Merit Board and suspended without pay pending a termination decision.

62. By contrast, Caucasian officers within the Cook County Sheriff's Office have been given no or lesser discipline whatsoever for utilizing similar authorized techniques, *or*, for engaging in conduct clearly violative of Sheriff's policy, *to wit and by example for comparison only*:

a. A Caucasian correctional officer[2] received a ten-day suspension for allegedly grabbing another officer around the neck and shoving that officer's head into a door, an act for which the offending officer was ultimately charged criminally.

b. A Caucasian allegedly threw a medicine pan at an inmate shackled to a bench,

---

[2] The names of exemplary comparator officers in non-published instances are in the possession of undersigned counsel and can be disclosed to the Court, but are omitted from this complaint for privacy reasons.

employed OC spray multiple times at the inmate, and was never given

recommended for any discipline whatsoever.

c. A Caucasian officer allegedly brought an inmate into an unauthorized area and

beat him without cause never to be given any discipline whatsoever.

d. These are exemplary cases only and, on information and belief, a substantial

number of similar cases exist that will be confirmed and uncovered after a

reasonable opportunity to conduct discipline.

63. Plaintiffs Sheppard, Shyne, Garrett-Williams, and Shaffer are charged with

"conduct unbecoming" a Sheriff's Officer as a basis to send them to the Merit Board

and to suspend them without pay pending a termination hearing there.

64. By contrast, numerous Caucasian officers within the Cook County Sheriff's

Office have been given no or lesser discipline whatsoever for engaging in "conduct

unbecoming" a Sheriff's Officer, *or*, for engaging in conduct clearly violative of Sheriff's

policy, *to wit*:

a. A Caucasian officer allegedly assaulted, battered, and resisted arresting police

officers while off duty and intoxicated, and was never suspended without pay pending

a Merit Board hearing.

b. A Caucasian officer allegedly assaulted, battered, and resisted a police officer at

a casino and was not suspended without pay pending a Merit Board hearing.

c. A Caucasian officer was allegedly arrested for domestic battery and never

suspended without pay pending a Merit Board hearing.

d. A Caucasian officer allegedly threatened neighbors and was never suspended without pay pending a Merit Board hearing.

e. A Caucasian officer allegedly struck a suspect with a gun and was never suspended without pay pending a Merit Board hearing.

f. A Caucasian officer allegedly caused an accident while driving drunk and fled the scene, but was never suspended without pay pending a Merit Board hearing.

g. In a highly-publicized case, Sheriff's Police Deputy Chief was given a ten-day suspension for engaging in conduct unbecoming for "for allowing others to avoid having to pay the price of admission last year to a Cubs World Series game at Wrigley Field, newly obtained records show," which tickets cost potentially thousands of dollars each. *See https://chicago.suntimes.com/news/sheriffs-official-suspended-10-days-over-cubs-world-series-sneak-in/.*

h. Another Caucasian officer engaged in a police chase resulting in civilian deaths and was never suspended without pay pending a Merit Board hearing.

65. The foregoing are exemplary only; the Sheriff's disciplinary policies, practices, and decisions complained of herein are working a statistically-significant disparate impact upon non-Caucasian and Black officers based on conduct or alleged conduct that Caucasians are either not disciplined for, not disciplined as severely for, or for which Caucasian officers are not suspended without pay and sent for a Merit Board

hearing.

66. While Plaintiffs have evidentiary supports for all of the claims herein as of filing, each Plaintiff believes even more evidentiary support for all claims herein will emerge after a reasonable opportunity for discovery pertaining to the entirety of the Sheriff's disciplinary process, the policies and practices utilized therein, and exploration of the reasons for the Sheriff's disciplinary process resulting in a double standard: policies/practices for White officers and a different, harsher set of policies/practices for non-White officers.

67. Even regardless of the similarity of accusations against officers, there is an overwhelming lack of consistency in the Sheriff's disciplinary process that is creating an undue and substantial and disparate burden on non-Caucasian and Black officers such as Plaintiffs.

### IV. Plaintiffs Have All Suffered Damages As A Result Of The Sheriff's Discriminatory Policies, Practices And Decisions.

68. As a direct and proximate result of Defendant's discriminatory policies, practices, and decisions, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

69. Defendant's unlawful actions were at all times intentional, willful, malicious, and/or done with reckless disregard and/or deliberate indifference to Plaintiffs' rights to be free from discrimination based on race.

16

### COUNT I: 42 U.S.C. § 2000e-2
### TITLE VII SYSTEMIC, PATTERN-AND-PRACTICE DISPARATE TREATMENT RACE DISCRIMINATION
### (Plaintiffs v. Defendants)

70. Plaintiffs repeat, re-allege and incorporate by reference, the allegations in all other paragraphs of this Complaint with the same force and effect as if herein set forth.

71. Section 703 of Title VII, 42 U.S.C. § 2000e-2 prohibits employment practices that discriminate against persons on the basis of their race.

72. Defendants at all relevant times have maintained an employment system that intentionally discriminates against, or imposes disparate treatment upon, Black sworn Sheriff's officers with respecti to disciplinary investigation, recommendation for discipline, recommendations of level of discipline, suspensions without pay, and initiation of Merit Board complaints seeking termination.

73. The aforementioned employment practices are causing such racially disparate treatment, effects, and impacts both individually and, collectively, as an entire disciplinary process.

74. The aforementioned employment practices have been instituted

intentionally to adversely affect Black sworn officers, and/or have been instituted with deliberate indifference to disparate racial-based treatment, effects, and impacts such procedures have on sworn Black officers.

75. As a direct and proximate result of Defendant's pattern-and-practice of discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proved at trial.

76. Defendant Dart's unlawful actions have been taken with actual and/or deliberate intention to cause harm and/or have shown an utter indifference to and conscious disregard of the rights of Plaintiffs to be free from unlawful discrimination.

77. Defendant's conscious disregard and utter indifference is shown by, *inter alia*, the sheer number of employment discrimination lawsuits filed against his office, and overwhelming numbers of internal complaints thereof, in the years since Defendant took office.

**WHEREFORE**, and that there is sought, judgment against Defendants, for back-pay, actual, general, special, compensatory damages in actual amounts to be proved at trial. Plaintiffs further demand judgment against Defendant for attorney's fees, court and litigation costs, and such other relief deemed to be just and equitable.

## COUNT II: 42 U.S.C. § 2000e-2
## TITLE VII DISPARATE IMPACT RACE DISCRIMINATION
### (Plaintiffs v. Defendants)

78. Plaintiffs repeat, re-allege and incorporate by reference, the allegations in all other paragraphs of this Complaint with the same force and effect as if herein set forth.

79. Section 703 of Title VII, 42 U.S.C. § 2000e-2 prohibits employment practices that discriminate against persons on the basis of their race.  Plaintiffs are informed and believe that Defendant Dart's disciplinary policies, practices, and decisions have an adverse effect and disproportionate impact on them because of they are non-Caucasian and because they are African-American.

80. Defendant's aforementioned policies and practices were and are neither manifestly job-related, nor consistent with business necessity.

81. Less discriminatory alternatives exist to achieve Defendant Dart's purported business purposes, if any.

82. As a direct and proximate result of Defendant's discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proved at trial.

83. Defendant Dart's unlawful actions have been taken with actual and/or

deliberate intention to cause harm and/or have shown an utter indifference to and conscious disregard of the rights of Plaintiffs to be free from unlawful discrimination.

84. Defendant's conscious disregard and utter indifference is shown by, *inter alia*, the sheer number of employment discrimination lawsuits filed against his office, and overwhelming numbers of internal complaints thereof, in the years since Defendant took office.

**WHEREFORE**, and that there is sought, judgment against Defendants, for back-pay, actual, general, special, compensatory damages in actual amounts to be proved at trial. Plaintiffs further demand judgment against Defendant for attorney's fees, court and litigation costs, and such other relief deemed to be just and equitable.

### COUNT III: 42 U.S.C. § 1983
### *MONELL* - DEPRIVATION OF 14th AMENDMENT EQUAL PROTECTION
### (Plaintiffs v. Defendants)

85. Plaintiffs repeat, re-allege and incorporate by reference, the allegations in all other paragraphs of this Complaint with the same force and effect as if herein set forth.

86. Defendant Dart is and has been at all times has been acting under color of law.

87. Defendant Dart has final policymaking authority for and as to the Sheriff's Office of Cook County.

88. Under color of law, Defendant Dart adopted policies, practices, and customs of

suspending Plaintiffs without pay pending a Merit Board hearing in violation of their 14th Amendment constitutional rights to be afforded due process and equal protection of the laws without regard to their race.

89. Under color of law, Defendant Dart has established a widespread, permanent, well-settled practice and custom of suspending non-Caucasian officers without pay in accordance with such policies, practices, and customs

90. All of the Plaintiffs' cases represent a specific patterns of incidents in which Defendant has established a policy and custom that, although unlawful, has the authority and air of law such as to constitute Sheriff's official policy and practice.

91. Under color of law, Defendant Dart, by the deliberate adoption of such policies, practices, and customs, caused the constitutional deprivations and injuries to Plaintiffs, *to wit*, being denied equal protection of the laws because of their race.

92. The violations of Plaintiffs' constitutional Fourteenth Amendment rights resulted from Defendant Dart's official policy, custom and practice, and express acts under the color of law.

93. Defendant Dart's conduct and omissions were and are the actual and proximate cause of the deprivation of Plaintiffs' constitutional rights to due process of law and equal protection of the law regardless of their race.

94. Plaintiffs have suffered actual harm to include loss of employment,

loss of wages, loss of benefits, loss of pension service credits and contributions, and humiliation, anxiety, and stress.

WHEREFORE, Plaintiffs pray that this Court enter and order and enter judgment against Defendants for all of the following affirmative and other relief: (1) pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage; (2) pay the costs of litigating this action and reasonable attorneys' fees; (3) pay punitive damages; (4) order Defendant Dart to cease and desist from suspending officers without pay pending Merit Board action in a manner that creates a racially disparate impact; and, (5) order such other relief as this Court deems just and proper.

## COUNT IV: 42 U.S.C. § 1983
## *MONELL* - DEPRIVATION OF 14th AMENDMENT DUE PROCESS
### (Plaintiffs v. All Defendants)

95. Plaintiffs repeat, re-allege and incorporate by reference, the allegations in all other paragraphs of this Complaint with the same force and effect as if herein set forth.

96. At all times relevant, Plaintiffs have had protected property interests in their continued compensation as *for cause* public sector government employees, under the Cook County Sheriff's Merit Board Act, 55 ILCS 5/3-7001, *et seq.*, under their applicable collective bargaining agreements, as non-probationary employees subject to progressive discipline, under Sheriff's regulations, including the Sheriff's Employment Action

Manual and Sheriff's General Orders, and by implied promise of continued employment.

97. At all times relevant, Plaintiffs may only be investigated for cause and pursuant to complaints filed consistent with at least Illinois' Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/1, *et seq.*, Sheriff's regulations and policies, and the Sheriff's Employment Action Manual.

98. Defendants Dart is and has been at all times has been acting under color of law.

99. Defendant Dart has final policymaking authority for and as to the Sheriff's Office of Cook County.

100.     Under color of law, Defendant Dart adopted policies, practices, and customs of suspending Plaintiffs and similarly-situated officers without pay pending a Merit Board hearing in violation of their 14th Amendment constitutional rights to be afforded due process of the law without regard to their race.

101.     Defendant Dart's deliberate actions in enacting such policies, practices, decisions, customs, and procedures has placed Plaintiffs in a position where their race has been at least a significant motivating factor, if not the primary factor, in causing their investigations, recommended discipline and level of discipline, and suspensions without pay pending a Merit Board hearing.

102.     Under color of law, Defendant Dart has established a widespread,

permanent, well-settled practice and custom of investigating, recommending for discipline at level of discipline above Caucasian officers, and suspending non-Caucasian officers without pay in accordance with such constitutionally infirm policies, practices, and customs.

103. All of the Plaintiffs' cases represent a specific pattern of incidents in which Defendant has established a policy and custom that, although unlawful, has the authority and air of law so as to constitute Sheriff's official policy and practice.

104. Under color of law, Defendant Dart, by the adoption of such policies, practices, and customs caused the constitutional deprivations and injuries to Plaintiffs, *to wit*, being denied due process of law because of their race.

105. The violations of Plaintiffs' constitutional Fourteenth Amendment rights resulted from Defendant Dart's official policy, custom and practice, and express acts under the color of law.

106. Defendant Dart's conduct and omissions were and are the actual and proximate cause of the deprivation of Plaintiffs' constitutional rights to due process of law regardless of their race.

107. Plaintiffs have suffered actual harm to include loss of employment, loss of wages, loss of benefits, loss of pension service credits and contributions, and humiliation, anxiety, and stress.

WHEREFORE, Plaintiffs pray that this Court enter and order and enter judgment against Defendants for all of the following affirmative and other relief: (1) pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage; (2) pay the costs of litigating this action and reasonable attorneys' fees; (3) pay punitive damages; (4) order Defendant Dart to cease and desist from suspending officers without pay pending Merit Board action in a manner that creates a racially disparate impact; and, (5) order such other relief as this Court deems just and proper.

## COUNT V: INDEMNIFICATION
### (Plaintiffs v. Cook County)

108.     Plaintiffs reallege and incorporate by reference all other paragraphs of this Complaint above as if fully set forth herein.

109.     Illinois statute provides that a local public entity such as Defendant Cook County is obligated to assume financial responsibility for the actions committed by its officials or employees, such as Defendant Thomas J. Dart.  *See* 745 ILCS §§ 10/1-202, 10/2-302, and 10/9-102.

WHEREFORE, Plaintiffs respectfully request that Defendant Cook County be directed to pay, indemnify, and assume financial responsibility for the actions and/or omissions committed by Defendant Dart in all ways for harms caused by him.

## COUNT VI: CLASS ACTION
### (Plaintiffs v. All Defendants)

110.     Plaintiffs reallege and incorporate by reference all other paragraphs of this Complaint above as if fully set forth herein.

111.     Plaintiffs see to represent themselves and all other similarly-situated non-Caucasian and Black officers, of whom, on information and belief, there are several hundred.

112.     The putative class would be comprised of the following persons:

**"Since January 1, 2016, all African-American Cook County Sheriff's sworn employees who have been subjected to Defendants' racially-discriminatory policies, practices, and decisions leading to such employees' investigation, recommendation for discipline, suspension without pay pending Merit Board proceedings, and/or subjected to Merit Board proceedings."**

113.     Members of the putative class are so numerous that joinder is not practicable, and is certainly over 40 putative members.  *See* 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.05 at 3-25 (3d ed. 1992) ("In light of prevailing precedent, the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable. . .").

114.     Common questions of law and fact pervade the entire putative class and predominate over all other questions.

115.     The Plaintiffs' claims are typical of the claims of the entire class.

116.     The Plaintiffs will fairly and adequately represent and protect the interest of the members of the putative class.

117.     Prosecution of individual claims by members of the putative class would create a risk of inconsistent or varying adjudications, and would substantially impair or impede the interests of other members of the class because, *inter alia*, Plaintiffs' and putative class members' claims are strongly evident when viewed from the systemic perspective presented in this Complaint, but, while still true and present, not as evident in individual cases.

118.     Because of the predominance of factual and legal questions and the nature of the claims involved in this case, the class action is the only appropriate means of resolving this controversy.

119.     Experienced class counsel will be appearing alongside undersigned counsel.

120.     A motion for class certification will follow filing of this Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court grant this Count for Class Certification for the reasons articulated in the Motion.

**JURY DEMANDED AS TO ALL COUNTS**

DATED:  September 2, 2018

Respectfully submitted,

*/s Cass T. Casper*

_____

Cass T. Casper, Esq.
One of Plaintiffs' Attorneys

*Cass T. Casper, Esq.*, Plaintiffs' Counsel
Illinois Attorney Registration Number 6303022
TALON LAW, LLC
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
Phone: (312) 351-2478 | Fax: (312) 276-4930
Email: ctc@talonlaw.com

*Arthur Gold, Esq.*, Plaintiffs' Counsel
Gold & Associates, Ltd.
55 West Monroe Street, #2300
Chicago, Illinois 60603
P: (312) 473-2968
F: (312) 372-0778
E: asg@gcjustice.com

### VERIFICATIONS

Pursuant to 28 U.S.C. 1746, I, MARTENIA SHYNE, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature: /s MARTENIA SHYNE, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, ANTOINETTE GARRETT-WILLIAMS, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature: /s ANTOINETTE GARRETT-WILLIAMS, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, DAVID EVANS III, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature: /s DAVID EVANS III, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, LASHON SHAFFER being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature:  /s LASHON SHAFFER, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, MONTA SERVANT, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature:  /s MONTA SERVANT, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, TABAS JACKSON, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature:  /s TABAS JACKSON, 9/1/2018**

Pursuant to 28 U.S.C. 1746, I, DAVID SHEPPARD, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge. Where the contents are alleged to be on belief, I verily believe the same to be true.
**Plaintiff's Signature:  /s DAVID SHEPPARD, 9/11/2018**